**In re J. Raiford LUKER, Jr. and Yvonne Luker, Debtors.**

**Bankruptcy No. 83–00854–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Dec. 22, 1992.

Catherine Depew, Asst. U.S. Atty., Tulsa, OK, for I.R.S.

J. Scott McWilliams, Tulsa, OK, for Trustee.

Richard A. Wieland, Wichita, KS, for U.S. Trustee.

ORDER DENYING IN PART ADMINISTRATIVE EXPENSE CLAIM AND "MOTION FOR ORDER DIRECTING PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM ..." OF INTERNAL REVENUE SERVICE (AS TO INTEREST ON POST–PETITION TAXES)

MICKEY DAN WILSON, Bankruptcy Judge.

This matter comes on for decision, after hearing and subsequent submission of briefs by the parties. Upon consideration thereof, and of the record herein, the Court, pursuant to F.R.B.P. 9014 and 7052, finds, concludes and orders as follows. Procedural history of the matter is included among "Findings of Fact."

## FINDINGS OF FACT

On June 15, 1983, J. Raiford Luker Jr. and Yvonne Luker ("debtors") filed their voluntary petition for relief under 11 U.S.C. Chapter 11 ("Ch. 11") in this Court. Debtors did various businesses under such trade names as "North East Distributing Inc.," "Tractor Parts, and Equipment Co. Inc.," "Farmer's Wholesale," and "Tire City." On or about September 24, 1985, the Court appointed Rick Loewenherz as Ch. 11 Trustee ("the Trustee").

On November 10, 1986, a document was filed herein dated "11/07/86" and entitled "Request for Payment of Internal Revenue Taxes (Bankruptcy Code Cases—Administrative Expenses)." The document was not styled as a pleading; so the Clerk filed and docketed it as a proof of claim, designating it as claim no. 77 herein. The claimant was the "Department of the Treasury/Internal Revenue Service" ("IRS"). IRS requested "Administrative Claims" for FICA withholding and FUTA taxes, for tax periods from December 31, 1983 to September 30, 1985, in the amount of $29,818.67; plus "Accrued Interest as of the Date of this Request" in the amount of $5,815.68; plus "Accrued Penalty as of the Date of this Request" in the amount of $8,451.22; for a total of $44,085.57. This claim form also recited that the "Dollar amount per day at which interest will accrue after date of this request" was "$0;" and that the "Dollar amount per month at which late payment penalty will be charged (at ½ of 1 percent a month) after the date of this request" was "$149.10."

On April 20, 1989, IRS filed its "Motion for Order Directing Payment of Administrative Expense Claim ..." Said motion referred to the abovementioned claim; alleged that "as of May 31, 1989, this claim will be in the sum of $65,076.63;" and asked for "disbursal of funds ..." in payment thereof. On May 5, 1989, the Trustee by his attorney J. Scott McWilliams filed his "... Objection ..." to said motion, asserting that IRS "failed to state any reason why their administrative expense claim should be paid before a distribution to other administrative and unsecured claimants," and declaring the Trustee's intention to file a plan, pursuant to which IRS would be paid at the proper time. The Trustee's objection did not challenge the amount or asserted priority of the claim.

The motion and objection were set for hearing. At hearing on June 23, 1989, it appeared from statements of counsel that additional issues had arisen; and the parties were directed to file briefs. On June 30, 1989, IRS filed its "... Brief Re: Payment of Interest and Penalties on Postpetition Taxes as an Administrative Expense." On July 7, 1989, the Trustee filed his "... Brief Regarding Claim Classification of Interest and Penalties on Post Petition Taxes." On July 21, 1989, IRS filed its "... Response to Trustee's Brief. ..." The

Court then took the matter under advisement.

### CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (O), 11 U.S.C. § 503(b)(1)(B), (C), § 510(c).

Debtors, while debtors-in-possession in charge of this bankruptcy estate pursuant to 11 U.S.C. §§ 1101(1), 1107(a), 1108, did not make certain withholdings and tax payments to IRS as required by law. Debtors were succeeded by a Trustee, who did not share in their misfeasance but is to some extent bound by it. The Trustee concedes that IRS has a valid claim for such post-petition taxes, and for penalties and interest thereon (except as noted below). The Trustee further concedes that post-petition taxes and penalties thereon are entitled to priority of payment as administrative expenses, pursuant to 11 U.S.C. § 503(b)(1)(B), (C). But the Trustee objects to such favorable treatment of interest on post-petition taxes. The Trustee argues

> that interest on claims should only be allowed when there [are] sufficient assets to pay *all* claims in full. This ... is consistent with the underlying theme of the Bankruptcy Code that all creditors should be treated equally under a concept of ratable distribution,

Trustee's brief p. 7 (emphasis original). Although couched in terms of "disallowance of claim," this argument is tantamount to a request that IRS' allowable claim for post-petition interest be subordinated to other claims for purposes of priority of payment, see 11 U.S.C. § 510(c).

11 U.S.C. § 507(a)(1) grants first priority to "administrative expenses allowed under section 503(b) of this title ..." 11 U.S.C. § 503(b)(1) provides for allowance of "administrative expenses ... including— ... (B) any tax ... incurred by the estate, except [income taxes under § 507(a)(7) ] ... and (C) any fine, penalty, or reduction in credit, relating to a tax of a kind specified in subparagraph (B) of this paragraph ..."

Section 503(b)(1)(B) and (C) mention "tax" and "fine [or] penalty," but do not mention "interest." The statute does not grant the favored treatment of interest on post-petition taxes which IRS seeks. When Congress wanted to specify treatment of interest, Congress knew how to do so, see 11 U.S.C. § 726(a)(5).

Does it follow that the statute *forbids* the relief IRS seeks? This Court will not leap to such a conclusion, for at least two reasons. First, § 503(b) expressly states that its list of administrative expenses is "inclu[sive]," which is to be construed as "not limiting," 11 U.S.C. § 102(3). The statute therefore allows the Court to create "an extraordinary non-statutory administrative expense," if "the circumstances ... warrant," *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 975 (B.C., N.D.Okl. 1990). Second, as a general rule in statutory interpretation, this Court is slow to draw negative inferences from mere statutory omissions, *In re Szafranski*, 147 B.R. 976, 982–83 (B.C., N.D.Okl.1992). Such

> inferences are safest when they conform with other statutory provisions and with legal and equitable tradition.

> .    :    .    .    .

> To test the negative inference, and to resolve the statutory [incompleteness or] ambiguity, the Court proceeds to consider the legal and equitable context and legislative history of [the statutes in question],

*id.* at 982–83.

"Bankruptcy courts are in the business of mitigating the harm caused by insolvency" by seeing to it that, in these unfortunate circumstances, "all [creditors] gain and lose in the same proportion," *In re Hancock*, 137 B.R. 835, 837 (B.C., N.D.Okl.1992). To this end, "equality of distribution among [creditors] of the property of the bankrupt" is "the prime bankruptcy policy," *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 449, 21 S.Ct. 906, 909, 45 L.Ed. 1171, 1178 (1901); *Union Bank v. Wolas*, —— U.S. ——, ——, 112 S.Ct. 527, 533, 116 L.Ed.2d 514, 524 (1991) quoting H.Rep. No. 95–595, pp. 177–178, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6138. Priority payment of a few favored claims contradicts this basic princi-

ple; for "to the extent one creditor's losses are mitigated by giving it a prior claim on inadequate estate assets, other creditors' losses will be aggravated," *In re First Security Mortgage Co., Inc.,* 117 B.R. 1001, 1004 (B.C., N.D.Okl.1990). A creditor which demands such priority payment of its own claim at the expense of other creditors bears the burden of showing its entitlement thereto, *In re Mid Region Petroleum, Inc.,* 111 B.R. p. 971. This burden is a heavy one; for such favoritism can only be justified by clear command of statute or necessary expediency, *In re First Security Mortgage Co., Inc.,* 117 B.R. pp. 1004–1005, 1007–1008; *In re Mid Region Petroleum, Inc.,* 111 B.R. pp. 971–972. This is a hard but sensible rule; and this Court has applied it on many prior occasions, e.g. *In re Burke,* 147 B.R. 787 (B.C., N.D.Okl.1992) (administrative expense for debtors' attorneys' fees denied in part, due to results obtained); *In re Wise Transportation, Inc.,* 148 B.R. 52 (B.C., N.D.Okl.1992) (superpriority administrative expense for inadequate adequate protection granted per statute); *In re Republic Financial Corp.,* 128 B.R. 793, 804 (B.C., N.D.Okl.1991) (debtor's attorneys' expenses reimbursed due to benefit conferred on estate, but fees denied due to professional misconduct); *In re First Security Mortgage Co., Inc.,* supra (administrative expense priority granted to "headhunter" for prospective benefit conferred on estate); *In re Mid Region Petroleum, Inc.,* supra (administrative expense priority for so-called "administrative rent" denied for lack of benefit to estate)—and see *In re Hancock,* supra (setoff denied, in furtherance of policy of equality of distribution); *In re Heston Oil Co.,* 63 B.R. 711 (B.C., N.D.Okl.1986) (constructive trust refused, to avoid prejudice to other innocent creditors).

This heavy burden rests on IRS herein.

■ IRS proposes that "interest" should be considered part of "tax" for purposes of § 503(b)(1)(B), and cites *Bruning v. U.S.,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). This case offers scant support for IRS' position. In *Bruning v. U.S.,* the U.S. Supreme Court held that, where a tax debt

personally owed by debtor was nondischargeable, interest followed the tax and was also nondischargeable. The Court stated that this rule applied where "there is no evidence of any congressional intent to the contrary," *id.* 376 U.S. p. 360, 84 S.Ct. p. 908, 11 L.Ed.2d p. 775. The Court carefully distinguished nondischargeability of debts owed by debtor from the very different situation of payment of claims against the bankruptcy estate.

As to claims against the trustee in bankruptcy, the general rule for liquidation of the bankruptcy estate has long been that a creditor will be allowed interest only to the date of the petition ... [T]he general rule applies to claims against the trustee for taxes as well as for other debts ...

The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of post-bankruptcy interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors,

*id.* 376 U.S. pp. 361–363, 84 S.Ct. pp. 908–09, 11 L.Ed.2d pp. 775–776.

More to the point is *Nicholas v. U.S.,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). In that case, a debtor-in-possession under Ch. XI of the former Bankruptcy Act ("Ch. XI") withheld income, social security and excise taxes, but before paying them to IRS was displaced by a trustee in liquidation. The trustee did not file returns or pay the taxes when due. IRS sought an administrative-expense priority for taxes, penalties and interest. The referee allowed the taxes but neither penalties nor interest; the District Court affirmed; the 5th Circuit Court of Appeals reversed, allowing both penalties and interest; and the U.S. Supreme Court reversed in part, disallowing interest. Mr. Justice Stewart for the Court wrote that bankruptcy cases may pass

through "period[s] ... of administration," *id.* 384 U.S. p. 685, 86 S.Ct. p. 1680, 16 L.Ed.2d p. 860. This case fell into three such "period[s]": (1) before Ch. XI; (2) during Ch. XI; and (3) after Ch. XI and during the trustee's liquidation. The Court ruled that "the accumulation of interest on a debt must be suspended once an enterprise enters a period of bankruptcy administration beyond that in which the underlying interest-bearing obligation was incurred," *id.* Hence the estate could be liable, at most, only for interest accrued during the Ch. XI administration of the debtor-in-possession. Even such interest would stop accruing when the debtor-in-possession was displaced and a new "period of administration" commenced under the trustee. This rule was meant to reconcile the government's financial interest with

> the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate,

*id.* 384 U.S. p. 683, 84 S.Ct. p. 1679, 16 L.Ed.2d p. 859. The scales tipped in favor of equal distribution among creditors—although the rule of *Nicholas v. U.S.* would allow IRS to recover some amount of interest sometimes.

When a new Bankruptcy Code was drafted in 1977–1978, the Senate's version of § 503(b)(1)(B) expressly granted administrative expense priority to "any taxes, including interest thereon ...," S. 2266. The Senate's committee report specified that "Interest on tax liabilities and certain tax penalties incurred by the trustee are also included in this first priority," S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978) p. 66, U.S.Code Cong. & Admin.News, p. 5852. The House version had no such provision. When a compromise version was finally enacted, the Senate's express provision for interest as an administrative expense was deleted. See 3 *Collier on Bankruptcy* (15th ed. 1992) ¶ 503.04[1][b], [c].

In *U.S. v. Friendship College, Inc.,* 737 F.2d 430 (4th Circ.1984), the Court of Appeals for the 4th Circuit held that both penalties and interest on withholding which a Ch. 11 debtor-in-possession had not paid were entitled to administrative expense priority under § 503(b)(1). The Court did not discuss any pre-Code law; insisted, without discussion, that interest must be treated like taxes and penalties unless "proof" were provided to the contrary, *id.* p. 433; refused, without discussion, to draw any inference from the statute's failure to specify "interest" along with "tax" and "fine [or] penalty;" and cited the Senate committee report, on a version of the Code rejected before enactment, as evidence of Congressional intent to include interest under § 503(b)(1).

These deficiencies in the *Friendship College* opinion were noted in *In re Mark Anthony Construction, Inc.,* 78 B.R. 260 (9th Cir.BAP 1987). However, the dissent in *In re Mark Anthony Construction, Inc.,* believed that the majority gave insufficient attention to *Nicholas v. U.S.,* supra. The Court of Appeals agreed with the dissent, and at 886 F.2d 1101 (9th Circ.1989) adopted the rule of *Nicholas v. U.S.* for judicial practice under the new Bankruptcy Code. Insofar as the 9th Circuit Court's decision gave priority administrative expense status to $1,672.96 in interest which had already accrued "[a]t the time the liquidation began," 886 F.2d p. 1102, it simply conforms to *Nicholas v. U.S.* Unfortunately, the 9th Circuit Court's opinion reads in places like a repudiation of *Nicholas.* The 9th Circuit Court approached the initial problem of statutory interpretation with all due caution, and correctly determined that the statute alone did not decide the issue and that pre-Code caselaw, especially *Bruning* and *Nicholas,* must be consulted. The Court then announced that priority payment of interest regardless of harm to other creditors was " 'logical' " and that any other course "makes little sense to us," 886 F.2d p. 1108, despite *Bruning's* and *Nicholas'* teachings to the contrary. The 9th Circuit Court did complain of the difficulty, complexity, opacity, and internal inconsistency of the rules it

was asked to interpret and apply, 886 F.2d pp. 1101, 1108. Insofar as the 9th Circuit Court's opinion dwells on such factors in disregard of the basic teachings of *Bruning* and *Nicholas*, it would seem to miss the forest for the trees.

In *In re Allied Mechanical Services, Inc.*, 885 F.2d 837 (11th Circ.1989), another Court of Appeals gave priority administrative expense status to $18,800 interest on post-petition withholding, even though "[t]here are insufficient funds in the estate to pay all ... administrative claims in full," *id.* p. 838. The 11th Circuit Court claimed that its ruling was consistent with a "suggest[ed] ... overriding policy that a debtor's efforts to reorganize shall be financed by the debtor, not the debtor's post-petition creditors," *id.* p. 839. The 11th Circuit Court seemed unaware that its "suggest[ion]" caused the unsuccessful reorganization to be "financed," not by the debtor, but by other administrative claimants (not to mention other creditors generally). This case is unpersuasive, and this Court declines to follow it.

All of the Court of Appeals cases mentioned above were strongly influenced by the express provision for administrative expense treatment of tax penalties in § 503(b)(1)(C). It is true that all of the arguments against interest apply also against penalties; yet in spite of those reasons Congress undeniably gave administrative expense treatment to penalties. No explanation appears in legislative history of the Senate bill, whence this provision derives, or in floor statements on the compromise bill which was enacted. A leading bankruptcy treatise notes the existence of the provision but makes no attempt to explain it, 3 *Collier on Bankruptcy*, supra, ¶ 503.04[1][c]. The provision is not to be denied or slighted merely because it is difficult to explain. But the question here is whether it should be *extended*. Some courts find such extension " 'logical,' " *In re Mark Anthony Construction, Inc.*, supra, 886 F.2d p. 1108. In this Court's view, it is not "logical" to extend such a statutory provision beyond its express terms.

In *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Supreme Court called attention once again to "the historical principles of bankruptcy law ..."

> [D]enial of postpetition interest ... was part of the conscious allocation of ... benefits and losses between ... creditors ... It was considered unfair to allow a ... creditor to recover interest from the estate's unencumbered assets before [other] creditors had recovered any principal,

*id.* 484 U.S. p. 373, 108 S.Ct. p. 631, 98 L.Ed.2d pp. 749–750. The Court invoked these principles to deny post-petition interest to undersecured creditors even during the period of a debtor-in-possession's administration in Ch. 11. Even *Nicholas v. U.S.* had shown more tolerance of interest accrued during a debtor-in-possession's tenure; arguably, the Court in *Timbers* carried its traditional hostility to post-petition interest to new lengths. The Court did not retreat from this position in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (allowing post-petition interest on oversecured claim, based on "plain language" of § 506(b), *id.* 489 U.S. p. 242, 109 S.Ct. p. 1031, 103 L.Ed.2d p. 298, plus lack of evidence of any contrary intent) or in *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (dealing with ownership of funds which were withheld and paid to IRS, not with status of IRS' claim for amounts which were not withheld or paid; and acknowledging that "Equality of distribution among creditors is a central policy of the Bankruptcy Code," *id.* 496 U.S. p. 58, 110 S.Ct. p. 2262, 110 L.Ed.2d p. 56.)

Even more recently, the continuing vitality of the ancient policy has been noted by the Court of Appeals of this Circuit. In *In re Cassidy, Jr.*, 983 F.2d 161 (10th Circ. 1992), the 10th Circuit Court denied priority to an exaction under Internal Revenue Code § 72(t), in order to "implement ... a broad congressional policy against punishing innocent creditors of a bankrupt ... by avoiding burdening the claims of unsecured

**952**

creditors with penalties that are imposed on the debtor," 983 F.2d p. 164.

■ Judicial rules may continue in effect unless overruled by higher Courts or clearly repudiated by Congress, *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Just how "clear" a statutory repudiation must be, depends in some measure on the nature of the prior judicial rule, *U.S. v. Ron Pair Enterprises, Inc.*, supra. The clearest expression of Congressional repudiation should be required as to judicial rules which "reflect ... policy considerations of great longevity and importance," *id.* 489 U.S. p. 245, 109 S.Ct. p. 1032, 103 L.Ed.2d pp. 300–301. Judicial practice regarding post-petition interest reflected the most long-lived and fundamental of bankruptcy policies. It was an exercise in balancing the equities among creditors, in which the balance usually tipped against creditors who claimed interest at other creditors' expense. This venerable rule—that postpetition interest, even on taxes, should not be allowed save in special and compelling circumstances—should stand, unless overruled by higher Courts or clearly repudiated by Congress. The rule has recently been reaffirmed, or even extended, by the U.S. Supreme Court. It has not been clearly repudiated by Congress. Legislative history suggests that Congress deliberately refused to repudiate it.

■ These considerations might support an inference that, under current law, interest on post-petition taxes must be absolutely excluded from administrative expense priority. However, this Court need not go quite so far in this case. Here, priority payment of IRS' claims for interest on post-petition taxes would effectively penalize the general unsecured creditors for delay which was not their fault. Under such circumstances, IRS must show its clear right to such interest at other creditors' expense. IRS has failed to show any statutory entitlement to such favoritism. Under the rule of *Nicholas v. U.S.*, IRS might be entitled to some interest on taxes which came due during the debtor-in-possession's

tenure. But IRS has not shown the Court precisely when any of these taxes became "due." Since this aspect of the rule of *Nicholas v. U.S.* is itself questionable after *Timbers*, this Court deems it inexpedient to inquire further into the matter of tax due dates at this time. Since IRS has made no sufficient showing, its request(s) for favored treatment at the expense of other creditors must be denied.

There is a distinction between allowance of a claim for interest on post-petition taxes, and provision for priority payment thereof. This distinction is not always made clear, see 3 *Collier on Bankruptcy*, supra, p. 503–39 n. 65 discussing *In re Stack Steel & Supply Co.*, 28 B.R. 151 (B.C., W.D.Wash.1983) and *In re Lumara Foods of America, Inc.*, 13 B.C.D. 409 (B.C., N.D.Ohio 1985). For purposes of this opinion, authorities and rationales which would justify entire disallowance of a claim (e.g. *Bruning v. U.S.*, *Nicholas v. U.S.*, and *Timbers*) would certainly justify mere denial of priority payment on an allowed claim. Here, the Trustee objected primarily to priority payment, although late in the course of the dispute the Trustee came to mention "disallowance." This Court confines its ruling to the matter of priority of payment. The effect of the ruling herein is to deny IRS' claim for interest any greater priority of payment than that enjoyed by the general run of unsecured claims. (Compare 11 U.S.C. § 726(a)(5).)

Accord, *In re United Trucking Service, Inc.*, 851 F.2d 159, 164–165 (6th Circ.1988) (noting *Timbers*); *In re American International Airways, Inc.*, 77 B.R. 490 (B.C., E.D.Penn.1987) (reviewing cases).

■ As noted above, the Trustee's mention of "disallowance" might be construed as a request to subordinate payment of IRS' claim for interest under 11 U.S.C. § 510(c). Equitable subordination is best taken up in an adversary proceeding, F.R.B.P. 7001(7), or at second best after a definite motion therefor and deliberate proceedings thereunder. This Court declines to take up such an issue as an afterthought in the present proceeding. The Court does

note in passing that not only interest but tax penalties have been subordinated in certain circumstances, see e.g. *In re Burden,* 917 F.2d 115 (3rd Circ.1990); *Schultz Broadway Inn v. U.S.,* 912 F.2d 230 (8th Circ.1990); *In re Virtual Network Services Corp.,* 902 F.2d 1246 (7th Circ.1990). Whether a tax penalty generally entitled to priority administrative expense treatment under § 503(b)(1)(C) may be equitably subordinated in specific instances would be an interesting question.

Accordingly, IRS' claim no. 77 herein, and IRS' motion for order directing payment of the same, are denied insofar as they request classification of interest on post-petition taxes as an administrative expense and payment of the same prior to other unsecured claims; but are otherwise continued for disposition by further order(s) of this Court.

AND IT IS SO ORDERED.