**In re ROCKY MOUNTAIN REFRAC
TORIES, Tax I.D. Number 87–
0232540, Debtor.**

**Bankruptcy No. 94B–21665.**

United States Bankruptcy Court,
D. Utah,
Central Division.

Oct. 25, 1996.

---

Joel T. Marker, McKay, Burton & Thurman, Salt Lake City, UT, for Stephen W. Rupp, Trustee.

Scott M. Matheson, Jr., United States Attorney, Mark H. Howard, Special Assistant United States Attorney, Salt Lake City, UT, for U.S.

Stephen W. Lewis, Assistant Attorney General, Salt Lake City, UT, for Utah State Tax Commission.

Mary Ellen Sloan, Salt Lake County Attorney, Salt Lake City, UT, for Salt Lake County.

Winston M. Faux, Utah Department of Employment Security, Salt Lake City, UT, for Utah Department of Employment Security.

Stephen G. Stoker, Stoker & Swinton, Salt Lake City, UT, for Debtor.

## MEMORANDUM DECISION AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

There are two issues in this case. First, should interest sought by a claimant be allowed on administrative trade and tax claims incurred by a debtor in possession during a chapter 11 case? Second, if allowed, should the interest claims be paid at the same priority as the underlying claims after the chapter 11 case is converted to a case under chapter 7? This Court concludes that interest accrued on certain administrative claims during the chapter 11 case up until the date the case is converted to chapter 7 should be allowed, and that the interest portion of the claims has the same priority as the underlying claims.

### UNDISPUTED FACTS

Rocky Mountain Refractories (Debtor) filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 4, 1994. After incurring in excess of $350,-000 in unpaid administrative claims,[1] the Court converted the chapter 11 case to a chapter 7 case on September 29, 1995. Stephen W. Rupp was appointed as the Chapter 7 trustee (Trustee). Pursuant to the Trustee's request, the Court fixed May 1, 1996 as the bar date to file requests for payment of administrative expense claims.

*The Tax Claims*

The following governmental entities (collectively, the Tax Claimants) filed proofs of

---

1. The total amount of allowed administrative expense claims in this case has not yet been determined.

claim against the Debtor's estate which the Court deems to be requests for payment of administrative expense claims pursuant to section 503(a) of the Bankruptcy Code: [2]

| Claimant | Claim No. | Date Filed | Tax & Penalties | Interest |
|---|---|---|---|---|
| Salt Lake County Assessor [3] | 65 | Sept. 14, 1995 | $ 2,596.10 | $ 305.00 |
| Internal Revenue Service | 68 | Jan. 10, 1996 | $71,692.86 | $8,362.50 |
| Utah State Tax Commission | 106 | April 29, 1996 | $29,030.84 | $1,430.43 |
| Utah Department of Employment Security | 111 | May 30, 1996 [4] | $ 8,032.03 | $ 929.29 |

The Tax Claimants assert that their respective administrative expense claims (collectively, the Tax Claims) bear statutory interest at the following rates: [5] Salt Lake County Assessor (SLCA) at 11¼% per annum; Internal Revenue Service (IRS) at the variable rate set forth in 26 U.S.C. § 6621; and Utah Department of Employment Security (UDES) at 1% per month. The SLCA, IRS, UDES and, presumably, the Utah State Tax Commission (USTC), also maintain that interest accrues from the date that their respective Tax Claims were incurred during the chapter 11 case, through conversion, until paid by the Trustee in the chapter 7 case.

The Trustee objected to the Tax Claims arguing that the interest asserted in each claim should not be allowed as a first priority claim under sections 507(a) and 723(a)(1), but rather should be allowed priority under section 726(a)(5). By affording the Tax Claimants' interest claims priority under section 726(a)(5), they would effectively be paid as a fourteenth priority claim, because claims afforded priority under section 507(a), section 726(a)(2)–(4) and chapter 7 administrative expense claims would be paid prior to the interest claims. See 11 U.S.C. §§ 507(a) & 726(a)–(b). The IRS and SLCA filed written responses to the Trustee's objection, and the IRS, SLCA and UDES appeared at the hearing on the objection held on July 29, 1996.

The Tax Claimants assert that, pursuant to decisions of the United States Courts of Appeals for the Fourth, Sixth, Ninth and Eleventh Circuits, interest on administrative expense claims should be allowed and paid according to the same priority as the underlying claim. See Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indus., Inc.), 19 F.3d 1371 (11th Cir.1994); United States v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.), 916 F.2d 363 (6th Cir.1990); United States v. Ledlin (In re Mark Anthony Const., Inc.), 886 F.2d 1101 (9th Cir.1989); United States v. Cranshaw (In re Allied Mechanical Sers., Inc.), 885 F.2d 837 (11th Cir.1989); United States v. Friendship College, Inc. (In re Friendship College, Inc.), 737 F.2d 430 (4th Cir.1984); see also Small Business Admin. v. Preferred Door Co. (In re Preferred Door Co.), 990 F.2d 547 (10th Cir.1993) (acknowledging rules established in above cases); Fullmer v. United States (In re Fullmer), 962 F.2d 1463, 1467 n. 4 (10th Cir.1992) (same).

*The Trade Claim*

On February 6, 1996, Jerry W. Brailsford, a trade creditor of the Debtor, filed a proof of claim which was designated as claim number 88 (Trade Claim). On its face, the Trade Claim seeks payment of $17,504.38 as an unsecured nonpriority claim for goods sold during 1994 and 1995. The documents attached to the Trade Claim demonstrate that

---

**2.** Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

**3.** Proof of claim number 65 asserts interest in the amount of $135.53. The amount of interest was orally amended by the claimant at the hearing on the Trustee's objection to the claim.

**4.** This claim appears to have been filed after the bar date. *See infra* n. 16.

**5.** The rate at which the USTC's administrative expense claim bears interest is unknown.

it is for goods sold to the Debtor prior to and during the Debtor's chapter 11 case, plus interest on unpaid amounts for goods sold to the Debtor during the Debtor's chapter 11 case.

The Trustee objected to the Trade Claim asserting that it should be reclassified into a pre and postpetition claim, and that $1,062.88, constituting the stipulated amount of interest on the postpetition portion of the claim, should be afforded priority under section 726(a)(5) (Interest Trade Claim). The rate used to determine the amount of interest is not stated in the Trade Claim or in the Trustee's objection, but presumably accrues at a contract or state statutory rate. At a hearing held on July 29, 1996, the Court sustained the Trustee's objection in part, reclassifying the Trade Claim, but reserving judgment on the allowance of and priority to be afforded to the Interest Trade Claim.

The Court took the Trustee's objection to the Tax Claims and Interest Trade Claim under advisement. The Court has jurisdiction to issue a final order in this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The Court has now considered the memoranda and arguments of counsel and made an independent review of applicable law. Based thereon, the Court concludes that the interest incurred during this chapter 11 case on these administrative expense claims is allowable, but that such interest stopped accruing when the case was converted to a case under chapter 7, and that the interest incurred during the chapter 11 case must be paid at the same priority as the underlying administrative expense claims.[6]

---

**6.** No issue is raised regarding the underlying statutory or contractual entitlement to interest on the tax claims or the trade claim. This ruling, therefore, is limited to the facts of this case and does not deal with circumstances where the underlying entitlement to interest is not established by statute, contract or other authority.

**7.** All allowed administrative expense claims in a chapter 11 case are treated the same, unless the creditor agrees to different treatment. 11 U.S.C. §§ 503(b), 507(a)(1) & 1129(a)(9); *In re IML Freight, Inc.*, 52 B.R. 124, 135 (Bankr.D.Utah 1985) (providing extensive historical analysis on

## ANALYSIS

### *The Tax and Trade Claims Are Entitled To Interest Until Conversion Of The Case*

Since the resolution of the issues in this case requires analysis of an involved network of Bankruptcy Code provisions, the place to begin is with the language of the statute. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). In this case, the Tax Claims and the Trade Claim assert administrative expense claims. Section 503(b), which governs the allowance of administrative expenses, states, in relevant part, that:

(b) After notice and a hearing, there shall be allowed administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate ... and

(C) any fine, penalty or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph....

11 U.S.C. § 503(b)(1)(A)–(C). Section 507(a)(1) provides that administrative expense claims allowed under section 503(b) are afforded first priority of payment. 11 U.S.C. § 507(a)(1).[7]

There is no provision in section 503(b) or any other section of the Bankruptcy Code that governs the allowance of interest on administrative expense claims incurred in a

---

this point of law and citing numerous cases); 3 Collier on Bankruptcy ¶ 503.03 at 503–16 (15th ed. 1995); *see Nicholas v. United States*, 384 U.S. 678, 691, 86 S.Ct. 1674, 1683–84, 16 L.Ed.2d 853 (1966) (recognizing that § 64a(1) of the Bankruptcy Act, the predecessor to 11 U.S.C. § 503(b)(1), established sharply defined priorities that placed all expenses of administration on a party, including claims for taxes). Since confirmation of a chapter 11 plan is predicated upon payment in full of all administrative expense claims, there is no reason for a statutory prioritization of such claims. *See* 11 U.S.C. § 1129(a)(9).

chapter 11 case. *See In re John Clay & Co.,* 43 B.R. 797, 812 (Bankr.D.Utah 1984) (recognizing this point); *compare* section 502(b)(2) (disallowing claims for unmatured, or postpetition, interest on prepetition claims). The allowance of interest on administrative expense claims should not be read summarily into the statute especially in light of the well-known principle that administrative expense priority is to be "narrowly construed '[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among ... creditors.' " *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.),* 853 F.2d 1526, 1530 (10th Cir.1988) (quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's,* 789 F.2d 98, 100 (2d Cir.1986)); *see Begier v. Internal Rev. Serv.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262, 110 L.Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."); *General American Trans. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1134 (10th Cir.1993) (administrative expense priorities should fit within the categories listed in section 503(b)). This narrow reading of section 503(b) is supported by the fact that section 503(b)(1)(B) and (C) expressly classify postpetition taxes and fines, penalties and credit reductions on such taxes as administrative expenses, but do not include interest on such taxes. Resolution of the issue in this case is not so simple, however, because binding precedent compels the allowance of postpetition interest on chapter 11 administrative expense claims.

In *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), a case decided under the former Bankruptcy Act, the Supreme Court held that interest on postpetition, pre-conversion administrative expenses claims is allowable. In *Nicholas,* a debtor in possession in a reorganization pro-

ceeding withheld federal income taxes and social security taxes from postpetition wages paid to its employees, and collected federal excise taxes on certain postpetition receipts. Thereafter, the case was converted [8] to a liquidation proceeding and a trustee was appointed. A little more than a month after the trustee was appointed, the taxes that the debtor in possession withheld came due. The trustee neither paid the taxes nor filed any of the required returns. Approximately four years later, the United States submitted an application claiming as administrative expenses the principal of the taxes due, penalties assessed for the trustee's failure to file tax returns, and interest that had accumulated and would continue to accumulate on the postpetition taxes and penalties until they were paid. *Id.* at 680–81, 86 S.Ct. at 1677–78.

The relevant issue before the Court in *Nicholas* was whether the trustee was liable for interest on the taxes incurred by the debtor in possession. *Id.* at 679, 86 S.Ct. at 1677. The Court held that "the accumulation of interest on a debt must be suspended once an enterprise enters a period of bankruptcy administration beyond that in which the underlying interest-bearing obligation was incurred." *Id.* at 685, 86 S.Ct. at 1680. According to the Court, interest accrued at three different points in the bankruptcy proceeding: the pre-arrangement (prepetition) period,[9] the arrangement period (the period of time during which the debtor was debtor in possession), and the liquidating bankruptcy period. "A tax incurred within any one of these three periods would ... be entitled to bear interest against the bankrupt estate until, but not beyond, the close of the period in which it was incurred." *Id.* at 686, 86 S.Ct. at 1681. Thus, the accumulation of interest on the prepetition tax debt ceased when the arrangement period commenced,

8. In *Nicholas,* the debtor originally filed a petition under Chapter XI of the Bankruptcy Act seeking an arrangement with its unsecured creditors. When the arrangement failed, the debtor filed a petition in bankruptcy, *i.e.,* a liquidation case, and was adjudicated a bankrupt on the same date.

9. *City of New York v. Saper,* 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1946); *Sexton v. Drey-*

*fus,* 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1919); *see also Bruning v. United States,* 376 U.S. 358, 361–62, 84 S.Ct. 906, 908–09, 11 L.Ed.2d 772 (1964) (recognizing that interest on prepetition claims stops accruing on petition date); *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946) (same).

and the accumulation of interest on tax debt incurred during the arrangement period ceased when the liquidation period commenced. In *Nicholas,* the claim for interest sought by the United States was disallowed because the arrangement proceeding terminated before the taxes became payable and, therefore, no interest on the taxes accumulated during that proceeding. *Id.* at 689–90, 86 S.Ct. at 1682–83. But the ultimate holding based on the facts of the case does not change the Court's pronouncement of the tenet of law applicable to this case.

Although *Nicholas* was decided under the Bankruptcy Act, it remains binding law.[10] This Court should not abrogate the clear, long-standing rule set forth in *Nicholas* especially in light the fact that section 503(b) is similar to the Bankruptcy Act provisions interpreted in *Nicholas,*[11] the policies related to the allowance of administrative expense claims have not changed under the Bankruptcy Code, and Congress did not express a clear intent to abolish the rule in *Nicholas* when it enacted the Bankruptcy Code. *See Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) ("When Congress amends the Bankruptcy laws, it does not write 'on a clean slate.' ... [T]his Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the

subject of at least some discussion in the legislative history.") (citations omitted); *Ron Pair Enter.,* 489 U.S. at 245, 109 S.Ct. at 1032–33 (judicially created concepts should be retained if a statutory provision is ambiguous, prior law reflected significant policy considerations of great longevity and importance, and a proposed interpretation is in clear conflict with state or federal laws of great importance); *Kelly v. Robinson,* 479 U.S. 36, 47, 107 S.Ct. 353, 359–60, 93 L.Ed.2d 216 (1986) (silent abrogation of judicially created concepts is particularly disfavored when construing the Bankruptcy Code); *Midlantic Natl. Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.... The Court has followed this rule with particular care in construing the scope of bankruptcy codifications.") (citation omitted); *Colortex,* 19 F.3d at 1375 & 1378 (recognizing this rule of statutory construction in the context of analyzing the vitality of *Nicholas* ); *Allied Mech. Servs.,* 885 F.2d at 839 (absent clear indication from Congress existing law under *Nicholas* should not be altered). Although *Nicholas* involved postpetition interest on tax claims, it is not limited to the allowance of interest on tax claims and, therefore, applies to trade claims as well. *Colortex Indus.,* 19 F.3d at 1382.[12]

**10.** The Trustee asserts that if *Nicholas* were decided today, it would be decided differently because of the Supreme Court's recent statements indicating that courts cannot "reorder" the Bankruptcy Code's priority scheme. *See United States v. Noland,* — U.S. —, —–—, 116 S.Ct. 1524, 1526–27, 134 L.Ed.2d 748 (1996); *see also United Savs. Assoc. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (Court denied postpetition interest to undersecured creditor in chapter 11 case). While the Trustee's argument may be true, the fact remains that under the well-established principles discussed below, *Nicholas,* a case that is directly on point to the facts in this case, binds this Court. This Court will not speculate as to whether, if faced with the issue in this case, the Supreme Court would overturn *Nicholas.*

As a point of interest, the Court notes that the lower courts in *Noland,* similar to this Court, allowed interest on an administrative expense tax

claims as a first priority claim under sections 503(b), 507(a)(1) and 726(a)(1). This fact was recognized by the Supreme Court, but the propriety of that ruling was not before it in *Noland. Noland,* — U.S. at —, 116 S.Ct. at 1525.

**11.** *See* H.R.Rep. 595, 95th Cong., 1st Sess. 355 (1977) (section 503(b) is derived, for the most part from section 64a(1) of the Bankruptcy Act); S.Rep. No. 989, 95th Cong., 2d Sess. 66–67 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (same).

**12.** In *Sexton v. Dreyfus,* 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911), the Court held that interest on non-tax claims was suspended as of the petition date. In *City of New York v. Saper,* 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), the Court applied its decision in *Sexton* to claims for postpetition interest on tax debts. In so doing, the Court acknowledged that although *Sexton* did not deal with tax debts, tax debts were

The Court recognizes this ruling conflicts with *John Clay*, 43 B.R. at 812, in which this Court held that chapter 11 administrative expenses claimants were not entitled to interest on their claims because, as recognized above, "there is nothing in the Code to permit payment of interest to those holding an administrative expense claim." The Court in *John Clay* did not address *Nicholas*, and since *John Clay* the Tenth Circuit has indicated, without directly deciding, that interest on chapter 11 administrative expense claims is allowable. *See Preferred Door*, 990 F.2d at 547;[13] *see also Fullmer*, 962 F.2d at 1467 n. 4 (debtor conceded that taxing authority could collect interest on taxes arising postpetition and that Tenth Circuit recognizes several courts of appeals which have allowed such interest).

By allowing interest on chapter 11 administrative expense claims, this Court is not forsaking the parameters of section 503(b). Section 503(b), by its express terms, is not limiting inasmuch as it states that "there shall be allowed administrative expenses ... including—" the expenses listed in subsection (b) of that section. 11 U.S.C. § 503(b); *see* section 102(3) (rules of construction of the Bankruptcy Code state that the word "including" is not limiting).[14] The Court has recognized that "[w]hile it is true that the court is not free to fashion additional priori-

ties it ought not be assumed that the six designations [in § 503(b) ] are necessarily exclusive nor designed to cover every conceivable situation." *In re Callister*, 15 B.R. 521, 526 n. 20a (Bankr.D.Utah 1981) (quoting 3 Collier on Bankruptcy, ¶ 503.03 at 503–11–12 (15th ed. 1981)).[15] Construing section 503(b) to allow interest to accrue on chapter 11 administrative expense claims up until the time a case is converted to chapter 7 also facilitates its general purpose of encouraging creditors to continue dealing with and extending credit to a chapter 11 debtor in order to aid the debtor's reorganization. *Mid Region Petroleum*, 1 F.3d at 1134; *see Nicholas*, 384 U.S. at 687, 86 S.Ct. at 1681–82 (allowance of interest on postpetition debts promotes the availability of capital to the debtor and enhances the likelihood of achieving the goal of rehabilitation).

■ It is undisputed that the Tax Claims and the Trade Claim became payable prior to the conversion of the Debtor's case from chapter 11 to chapter 7. Applying *Nicholas*, interest that accrued on the Tax Claims and the Trade Claim during the postpetition, pre-conversion period is allowable.[16] Once the Court decides that interest accrued on chapter 11 administrative expense claims prior to conversion constitute allowable claims, the remaining issue is what priority the interest

"sufficiently clothed with the characteristics of other bankruptcy debts to justify the application of the general rule ... to suspend the accrual of interest on such claims on the date the petition in bankruptcy was filed...." *Nicholas*, 384 U.S. at 682, n. 10, 86 S.Ct. at 1679, n. 10 (summarizing rule in *Saper* ).

13. In *Preferred Door*, the bankruptcy court refused to confirm a chapter 11 plan because it did not provide for the payment of, *inter alia*, interest on postpetition taxes as an administrative expense claim, and the debtor's case was ultimately dismissed. The district court affirmed the bankruptcy court, finding that interest on administrative expense claims is allowable and has the same priority as the underlying claim. The Tenth Circuit affirmed the lower courts, but based its decision on alternative grounds. In so holding, however, the Tenth Circuit recognized case law which allows interest on administrative expense claims as an administrative expense and, therefore, assumed that interest on administrative expense claims was allowable. 990 F.2d at 550.

14. Indeed, it would be inconsistent to give priority status to a penalty associated with a tax, as allowed under section 503(b)(1)(C), but not to interest on the tax. Penalties, unlike interest, are not considered integral to the tax itself. *See Bruning*, 376 U.S. at 360, 84 S.Ct. at 907–08 (recognizing integral nature of tax claim and interest on tax claim). As such, it would be cumbersome to construe section 503(b) to give penalties higher priority than interest. *Flo–Lizer*, 916 F.2d at 366; *In the Matter of Peter DelGrande Corp.*, 138 B.R. 458, 461 (Bankr.D.N.J.1992).

15. This quote still appears in 3 Collier on Bankruptcy at p. 503–18 (15th ed. 1995).

16. Of course, the allowance of interest incurred on the postpetition tax claims during the chapter 11 case is dependant on the allowance of the underlying claim. As noted above, UDES's claim appears to have been filed after the bar date and, therefore, the Court questions whether this claim should be allowed. This issue was not raised by the parties. *See supra* n. 4.

on the Tax Claims and the Trade Claim is to be afforded in light of the conversion of the Debtor's case to one under chapter 7 of the Bankruptcy Code.

*Allowed Interest Is Entitled To The Same Priority As Underlying Claims*

 In *Nicholas,* the Supreme Court stated that:

[T]axes incurred during the arrangement period are expenses of the Chapter XI proceeding and are therefore technically a part of the first priority under § 64a(1). The final sentence of that section, however, subordinates arrangement expenses within that priority to the expenses of the superseding bankruptcy administration. Tax claims incurred during Chapter XI proceedings are therefore in fact junior to claims for expenses incurred in subsequent bankruptcy proceedings. The suspension of interest on taxes incurred during the arrangement period as of the date a bankruptcy petition is filed thus corresponds to the suspension of interest on pre-arrange-

ment taxes when a Chapter XI petition is filed.

384 U.S. at 687–88, 86 S.Ct. at 1682 (footnote omitted). *Nicholas* dictates that interest on the Tax Claims and the Trade Claim be paid in the same priority as the underlying claims—as administrative expense claims in the chapter 11 case. Finding that interest on administrative expense claims is payable as an administrative expense of the chapter 11 case is in accord with all of the decisions of the United States Courts of Appeals which have addressed this issue.[17] The decisions of the Courts of Appeals have been cited with approval by the Tenth Circuit in *Preferred Door,* where the Court assumed that interest on administrative expense claims is allowable and paid at the same priority as the underlying claim. 990 F.2d at 547; *see also Fullmer,* 962 F.2d at 1467 n. 4 (in *dicta* Tenth Circuit, citing *Mark Anthony* and *Allied Mechanical Servs.,* acknowledges that interest on administrative expense claims may be allowable).

The Trustee argues that this result cannot occur because it conflicts with section 726

---

17. *See Colortex Indus.,* 19 F.3d at 1371; *Flo-Lizer,* 916 F.2d at 363; *Mark Anthony Const.,* 886 F.2d at 1101; *Allied Mechanical Servs.,* 885 F.2d at 837; *Friendship College,* 737 F.2d at 430; *see also Towers v. United States (In re Pacific–Atlantic Trading Co.),* 64 F.3d 1292, 1298 (9th Cir. 1995) ("It is settled, then, that taxes incurred post-petition, and the . . . interest attached thereto are administrative expenses."); *United States v. Boatmen's First Nat'l Bank,* 5 F.3d 1157, 1160 (8th Cir.1993) (interest payable from secured creditor's collateral under section 506(c) after case is converted to chapter 7); *In re Gould & Eberhardt Gear Mach. Corp.,* 80 B.R. 614, 615–16 (D.Mass.1987) (interest on postpetition claim allowed as administrative expense claim in chapter 11 case); *United States v. Annett Ford, Inc. (In re Annett Ford, Inc.),* 64 B.R. 946, 947 (D.Neb.1986) (same); *In the Matter of Best Refrigerated Express, Inc.,* 192 B.R. 503, 513–14 (Bankr.D.Neb. 1996) (same); *In re Mall at One Assoc., L.P.,* 185 B.R. 1009, 1022 (Bankr.E.D.Pa.1995) (same); *In re Mariner Enterps. of Pensacola, Inc.,* 173 B.R. 771, 772–73 (Bankr.N.D.Fla.1994) (same); *In re Mesery,* 139 B.R. 34, 35–6 (Bankr.D.Wy.1992) (interest on tax claims accrued during chapter 11 case allowed as administrative expense claim in case subsequently converted to chapter 7); *In the Matter of Peter DelGrande Corp.,* 138 B.R. 458, 460–63 (Bankr.D.N.J.1992) (same); *In re Lunsford,* 134 B.R. 46, 48 (Bankr.M.D.Fla.1990) (interest on postpetition claim allowed as administrative expense claim in chapter 11 case); *In re F.A. Potts & Co.,* 114 B.R. 92, 94 (Bankr.E.D.Pa.

1990) (same); *Gline v. Horn & Co., P.C. (In the Matter of Isley),* 104 B.R. 673, 680 (Bankr.D.N.J. 1989) (same); *In re Swolsky,* 97 B.R. 348, 349 (Bankr.N.D.Ohio 1989) (interest on tax claims accrued during chapter 11 case allowed as administrative expense claim in case subsequently converted to chapter 7); *In re Injection Molding Corp.,* 95 B.R. 313, 315–16 (Bankr.M.D.Pa.1989) (interest on postpetition claim allowed as administrative expense claim in chapter 11 case); *In re The Precise Tool & Die Co.,* 93 B.R. 586, 589 (Bankr.N.D.Ohio 1988) (same); *In re Roy Amerson, Inc.,* 90 B.R. 526, 527–28 (Bankr.M.D.Fla. 1988) (same); *In re Patco Photo Corp.,* 82 B.R. 192, 193 (Bankr.E.D.N.Y.1988) (same) (citing numerous cases); *In re Mesa Refining, Inc.,* 66 B.R. 36, 37–38 (Bankr.D.Colo.1986) (postpetition interest on reclamation claims allowed as an administrative expense); *In re Pharmadyne Laboratories, Inc.,* 53 B.R. 517, 522 (Bankr.D.N.J.1985) (interest on postpetition claim allowed as administrative expense claim in chapter 11 case); *but see United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv., Inc.),* 851 F.2d 159, 165 (6th Cir.1988) (questioning allowance of interest on administrative expense claims); *In re Luker,* 148 B.R. 946 (Bankr.N.D.Okla.1992), *aff'd,* 1993 W.L. 740989 (N.D.Okla.1993) (disallowing interest administrative expense priority); *In the Matter of Mansfield Tire & Rubber Co.,* 73 B.R. 735, 740 (Bankr.N.D.Ohio 1987) (same).

which governs distribution in chapter 7 cases. Section 726 states, in relevant part, that:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title . . .;

 . . . . .

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection. . . .

11 U.S.C. § 726(a)(1) & (5).

Under this section, the trustee is required to distribute property of the estate in a champagne waterfall fashion. The trustee is first required to make distributions to claimants in the order specified in section 507. This means that administrative expense claims allowed under section 503(b) are afforded first priority, subject to the limitations on chapter 11 administrative expense claims which are subordinated to chapter 7 administrative expense claims under section 726(b). 11 U.S.C. §§ 503(b), 507(a) & 726(a)(1) & (b). After the trustee pays claims in the order set forth in section 507, the trustee pays the claims described in subsections (a)(2) through (4) of section 726. Only after all claims, both timely and tardily filed, and fines and penalties are paid, is the trustee authorized to pay interest on paid claims under section 726(a)(5). Any estate property left after the payment of interest is paid to the debtor. 11 U.S.C. § 726(a)(6).

According to the Trustee, section 726(a)(5), the only section of the Bankruptcy Code related to priority of distribution that discusses interest, requires that interest on chapter 11 administrative expense claims be paid pursuant to section 726(a)(5), which is actually a fourteenth priority, rather than as a first priority claim under sections 503(b), 507(a) and 726(a)(1). Any other reading the Trustee maintains would render section 726(a)(5) meaningless.[18]

■ The Trustee's argument has appeal,[19] but must be rejected because section 726(a)(5) can be read in conjunction with *Nicholas* without being rendered meaningless. Under *Nicholas,* interest on the administrative expense claims incurred during the chapter 11 case is an integral part of that claim. *Nicholas,* 384 U.S. at 678, 86 S.Ct. at 1674; *see also Bruning,* 376 U.S. at 360, 84 S.Ct. at 908 ("interest is . . . an integral part of a continuing debt."); *Allied Mech. Servs.,* 885 F.2d at 839 (recognizing this point). Therefore, the administrative expense claim, including interest incurred during the chapter 11 case, is paid as the "claim" under section 726(a)(1). Under section 726(a)(5), after the entire administrative expense claim including interest accrued during the chapter

---

**18.** The argument advanced by the Trustee has not been addressed in any of the cases cited in n. 17 decided by various Courts of Appeals. With the exception of *Allied Mech. Servs.,* all of those cases involved chapter 11 cases which were not converted to chapter 7, and section 726(a)(5) was not in question.

**19.** The Court recognizes the differences in payment of administrative expense claims in chapter 11 and chapter 7 cases. Debt incurred by a debtor or trustee postpetition but pre-confirmation in a chapter 11 case must be satisfied in full on the effective date of the plan by the holder of the claim receiving cash equal to the allowed amount of the claim, unless it has agreed to a different treatment. 11 U.S.C. § 1129(a)(9). In most reorganization cases, the debtor will be able to pay prepetition and administrative expense claims from future revenue or outside infusions of cash. If this cannot be accomplished, not only will a plan not meet the requirements of confirmation set forth in section 1129(a)(9), the plan likely will not pass the feasibility test under

section 1129(a)(11). *See Preferred Door,* 990 F.2d at 547. Incurring unpaid administrative expense claims during the course of a chapter 11 case and failing to satisfy the claims at confirmation is not an propitious start in convincing a court that a plan will succeed in paying prepetition creditors.

A chapter 11 case with outstanding allowed administrative expense claims that is converted to a case under chapter 7 presents a different situation. In that circumstance, the limited property of the estate must be liquidated and divided among a variety of claimants, including prepetition priority, secured and unsecured creditors, chapter 11 administrative expense claimants, and chapter 7 administrative expense claimants. 11 U.S.C. § 726. As discussed below, however, the method of payment of creditors in a chapter 7 case does not affect the priority of claims incurred in the chapter 11 case.

11 case is paid pursuant to sections 507(a)(1) and 726(a)(1) and (b), and all other claims listed in subsections (a)(1) through (4) of section 726 are paid in full, any remaining funds may be used to pay interest on all of the claims, including claims which contain interest.[20]

Stated another way, if a debtor is solvent, section 726(a)(5) requires the payment of interest on interest. Unpaid chapter 11 administrative expense claimants may assert a claim against the chapter 7 estate which includes interest incurred during the chapter 11 case. This claim must be paid in full as a first priority claim under sections 507(a) and 726(a)(1), subject only to chapter 7 administrative expense claims which are afforded superpriority under section 726(b). If the debtor proves to be solvent, the claimant is entitled to interest on its entire claim under section 726(a)(5), including that portion of its claim for interest incurred during the chapter 11 case, prior to return of any property to the debtor.

This interpretation is consistent with the history of section 726(a)(5) which was enacted to codify the "solvent debtor rule." This rule provides that if "the debtor proves solvent, a balance of the equities dictates that creditors may receive any surplus, including claims for interest arising postpetition, ahead of payment to the debtor." *Colortex*, 19 F.3d at 1376 (citing *Saper*, 336 U.S. at 332 n. 7, 69 S.Ct. at 556 n. 7; *Sexton*, 219 U.S. at 344, 31 S.Ct. at 257); *see American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.*, 233 U.S. 261, 267, 34 S.Ct. 502, 504–05, 58 L.Ed. 949 (1914). The solvent debtor rule existed well before the Supreme Court's ruling in *Nicholas* and, therefore, creditors who extended goods or services to a debtor in a reorganization proceeding under the Bankruptcy Act

presumably were afforded interest on interest.

The Court's interpretation of section 726(a)(5) is also consistent with the treatment of prepetition unsecured creditors who are entitled to interest on unpaid debts up until the date a bankruptcy petition is filed. 11 U.S.C. § 502(b)(2); *see Nicholas*, 384 U.S. at 682, 86 S.Ct. at 1678–79 (citing *Sexton*, 219 U.S. at 339, 31 S.Ct. at 257); *Saper*, 336 U.S. at 328, 69 S.Ct. at 555. Interest accrued prepetition becomes part of these creditors' claims. *See In re Bates*, 974 F.2d 1234 (10th Cir.1992) (prepetition interest on tax debt had same priority as the tax). If there are sufficient funds to make a distribution under section 726(a)(5), the creditors receive payment of their claim in full, including prepetition interest, plus interest accruing on the entire claim at the legal rate from the petition date. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 96–97 (1978) (the Senate Report accompanying section 726(a)(5) recognized that this section "also specifies that interest accrued on all claims (including priority and nonpriority tax claims) which accrued before the date of the filing of the title 11 petition is to be paid in the same order of distribution of the estate's assets as the principal amount of the related claims.") Since prepetition creditors are entitled to interest on interest if a debtor is solvent, it is fair to allow the same to administrative expense claimants who have provided services or goods to a chapter 11 debtor and were not paid prior to conversion.

Finally, the Court's interpretation of section 726(a)(5) prevents the stripping of a chapter 11 claimant's priority claim by mere happenstance of conversion of a case to chapter 7. There is no provision in chapter 11 similar to section 726(a)(5) which could be read to prevent the payment of interest on

---

**20.** Section 726(a)(5) states that interest paid is to be at the "legal rate from the date of the filing of the petition...." 11 U.S.C. § 726(a). Because this section provides for the payment of interest from the petition date, it has been argued that it does not apply to postpetition claims. This argument does not consider that section 726(a)(5) expressly incorporates section 503(b) claims by its reference to payment of claims listed in section 726(a)(1). This argument also has been uniformly rejected by the courts in cases involv-

ing the allowance of interest on professional fees and expenses incurred in a solvent chapter 7 case. *See U.S. Trustee v. Fishback (In re Glados, Inc.)*, 83 F.3d 1360 (11th Cir.1996); *Boldt v. Crake (In re Riverside–Linden Inv. Co.)*, 945 F.2d 320 (9th Cir.1991); *In re Brown*, 190 B.R. 689 (Bankr.M.D.Fla.1996); *In re Commercial Consortium of Cal.*, 135 B.R. 120 (Bankr.C.D.Cal.1991); *see also In re Motley*, 150 B.R. 16 (Bankr.E.D.Va. 1992). This issue, however, is not before the Court.

administrative expense claims. Thus, under *Nicholas* and section 1129(a)(9), chapter 11 administrative expense claimants could expect to be paid cash on the effective date of a plan for the entire amount of their claims, including interest that had accrued on unpaid portions of their claims. If the case were converted to chapter 7, however, and the Trustee's argument were to be adopted, the same claimants, asserting the same claims, would have the interest portion of their claims stripped. Nothing in the Bankruptcy Code warrants such a result,[21] and disallowing such claims would deter creditors from dealing with chapter 11 debtors.

## CONCLUSION

Accordingly, the Court concludes that interest requested on the Tax Claims and on the Trade Claim incurred during this chapter 11 case should be allowed, but that interest stops accruing on the date that the case was converted to chapter 7. In addition, that portion of the claim for interest has the same priority as the underlying claims.

## ORDER

Based on the foregoing, it is hereby

**ORDERED,** that:

(1) The Trustee's objection to the Tax Claims is overruled; and

(2) The Trustee's objection to the Interest Trade Claim is overruled.

21. Section 348(d), which governs the effect of conversion of a chapter 11 case to a case under chapter 7 states that, other than claims specified in section 503(b), claims arising after the order for relief but before conversion are to be treated as prepetition claims.