**In re CITY ROOFING CO. OF MUSKO-GEE, INC., a/k/a City Roofing, EID 73–1132599 640 N. "C" Street Muskogee, OK 74403, Debtor.**

**Bankruptcy No. 95–71120.**

United States Bankruptcy Court,
E.D. Oklahoma.

May 7, 1997.

Betty O. Williams, Muskogee, OK, for debtor.

Mark Pordos, Oklahoma City, OK, for Oklahoma Employers Safety Group.

## ORDER AND NOTICE

TOM R. CORNISH, Bankruptcy Judge.

On the 11th day of February, 1997, the Final Report filed by the Debtor; Objection by Oklahoma Employers Safety Group ("OESG") ; Response by Debtor; Objection by the Debtor to OESG's Proof of Claim; and Response by OESG came before the Court for hearing. Counsel appearing were Betty Williams for the Debtor and Mark Pordos for OESG.

At the conclusion of the hearing, the Court gave the parties until March 20, 1997 in which to submit additional authorities.

After hearing evidence presented, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr.P., in this core proceeding:

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on August 18, 1995. On the Debtor's schedules, a debt to OESG was listed in the amount of $24,047.37. A Chapter 11 Plan was confirmed on March 20, 1996. The Plan provides:

2.4 Time for Filing Claims: All Creditors other than Creditors having Cost Claims or Administrative Expense Claims, including Creditors having damage claims by reason of section 1124(2)(c) of the Code, will be required to file proofs of claim in [sic] necessary by the Bar Date. Cost Claims, other than those made pursuant to section 330 of the Code, must be filed within thirty days of Closing. Holders of claims for Administrative Expenses need not file a proof of claim and will be paid in full by the Debtor in the ordinary course of business when they are due and payable.

The bar date was December 18, 1995. On October 23, 1996, OESG filed a proof of claim for an unsecured claim of $60,971.30. This unsecured claim arose as a result of audits performed by OESG. The Debtor obtained workers compensation coverage from OESG. The Debtor would make estimated payments for its workers compensation insurance. Thereafter, OESG conducted audits of the Debtor's payroll and adjusted the premiums accordingly. The Debtor would owe additional premiums or would be entitled to credit for that particular year. The audit was usually conducted a few months after the end of the fiscal year.

On December 13, 1995, OESG sent a letter to the Debtor which reflected that the 1994–95 audit had been completed and a balance was due in the amount of $34,745.00. Rita Boydston, who handles the workers compensation insurance for the Debtor, testified that she believed the Debtor owed OESG $4,246.40 for the year 1994–95. Ms. Boydston testified that she signed the 1995–96 audit, which reflected that her signature verified everything was true and correct. Ms. Boydston believed that she verified that the information in the audit was taken from the Debtor's books.

Tom Mobley, General Manager of OESG, testified that Krissy Jennings is an employee of OESG and at his direction, she prepared the letter to the Debtor dated December 13, 1995. He further testified that he instructed her to prepare a letter dated April 10, 1996, which reflected a balance due of $13,741.78 for the year 1995–96. The amount due and owing for the 1994–95 year was determined on September 21, 1995, approximately one month after the Debtor filed bankruptcy. The amount due and owing for the 1995–96 year was determined in May, 1996.

Mr. Mobley admitted that he was aware of the bankruptcy in August, 1995. He further communicated with the U.S. Trustee's office regarding the Creditors' Committee in September, 1995.

Patricia McBride, Manager of the Debtor, testified that it has been a struggle to meet all of the payments required under the Plan. She further testified that if she is required to pay this late-filed claim, then the Debtor will

probably not be able to continue with its reorganization.

The claim of OESG can be broken down into three components. First, a pre-petition claim for the 1994–95 year in the amount of $34,745.00; a pre-petition claim for April 1, 1995 through August 31, 1995 in the amount of $17,316.00; and a post-petition claim. The Debtor listed a pre-petition debt owed to OESG in the amount of $24,047.37. To this extent, the claim of OESG is allowed pursuant to 11 U.S.C. § 1111(a).

■ There is a pre-petition portion of $10,697.63 for the 1994–95 year which was not listed in the Debtor's schedules. OESG argues that the letter dated December 13, 1995 amounts to an informal proof of claim and therefore, the claim for 1994–95 year should be allowed in the amount of $34,-745.00.

■ Rule 3001(a), Fed. R. Bankr.P., provides that "[a] proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate official form." Courts have allowed "informal" proofs of claim. In order to constitute an informal proof of claim, the following requirements must be met:

1.  the claim must be in writing;

2.  there must be a demand by the creditor on the estate;

3.  it must evidence an intent to hold the debtor liable;

4.  the claim must be filed with the Bankruptcy Court; and

5.  allowance of the claim must be equitable under the circumstances.

*In re Plunkett,* 191 B.R. 768, 774 (Bankr. D.Wis.1995) (*citing Charter Co. v. Dioxin Claimants (In re Charter Co.),* 876 F.2d 861 (11th Cir.1989); *Anderson–Walker Indus. v. Lafayette Metals, Inc. (In re Anderson–Walker Indus.),* 798 F.2d 1285 (9th Cir.1986); *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.),* 754 F.2d 811 (9th Cir.1985); *In re Ellington,* 151 B.R. 90 (Bankr.W.D.Tex.1993); *In re Sorge,* 149 B.R. 197 (Bankr.W.D.Okla.1993); *In re Bowers,* 104 B.R. 362 (Bankr.D. Colo.1989); *In re*

*McCoy Mgt. Servs., Inc.,* 44 B.R. 215 (Bankr. W.D.Ken.1984)).

In the instant case, OESG seeks to have the December 13, 1995 letter be determined an informal proof of claim. However, this letter was never filed with the Bankruptcy Court. Nothing was filed on behalf of this creditor until the case was substantially completed; i.e., the Final Report had been filed by the Debtor. As a result, the December 13, 1995 letter cannot be an informal proof of claim. Further, since there is no informal proof of claim, it cannot be amended to include the 1995–96 pre-petition amounts due.

■ The next issue is whether OESG is entitled to an administrative priority claim for post-petition premiums. Administrative expenses are post-petition costs which are necessary to sustain a debtor's business. *In re Michigan–Wisconsin Transp. Co.,* 161 B.R. 628, 632 (Bankr.W.D.Mich.1993) (citation omitted). The Bankruptcy Court has broad discretion to grant administrative priority but that discretion is limited by the requirement that only actual and necessary costs of preserving the estate receive priority. *United States ex rel. Harrison v. Estate of Deutscher,* 115 B.R. 592, 599 (M.D.Tenn. 1990) (citations omitted). To be entitled to administrative priority status, a creditor must show that it provided a measurable benefit to the debtor's estate. *In re Marion Corp.,* 67 B.R. 487 (Bankr.S.D.Ala.1985).

In the instant case, the workers compensation premiums which seek to be accorded administrative priority status are post-petition workers compensation premiums. Workers compensation insurance is an actual and necessary expense for the debtor. However, the amount of the administrative claim was not clearly set forth in the hearing. OESG filed a proof of claim and listed none of its claim as a priority claim. However, in its brief, it states that $8,910.30 is for an administrative claim. The Debtor's records reflect that all workers compensation premiums from September, 1995 through March, 1996 were paid. On April 10, 1996, OESG sent a letter to the Debtor which reflected $13,741.78 was due. The Plan provided that holders of administrative claims would be paid when due. It was not until after the

audit for the 1995–96 year that the amount due to OESG could be determined. As a result, OESG's administrative claim will be allowed. However, the Court must hear additional evidence to determine the amount of the administrative claim.

IT IS THEREFORE ORDERED that the Objection to the proof of claim is **granted in part and denied in part.**

IT IS FURTHER ORDERED that the hearing on the amount of administrative claim is hereby set for **Wednesday, June 4, 1997 at 9:00 a.m. in the United States Courthouse, 4th and Grand Streets, Okmulgee, Oklahoma.** Counsel are requested to meet with one another and attempt to agree on the amount of the administrative claim prior to this hearing.

IT IS FURTHER ORDERED that approval of the Final Report is **denied.** The Debtor may file an Amended Final Report within ten (10) days after the resolution of the amount of the administrative claim of OESG.