In re **ROCKY MOUNTAIN REFRACTORIES**, doing business as RMR, Inc., doing business as Faux Cerara, Debtor.

**Stephen W. RUPP**, Trustee of the Chapter 7 bankruptcy estate of Rocky Mountain Refractories, Appellant,

v.

**UNITED STATES of America**, through its agency **INTERNAL REVENUE SERVICE**; Utah State Tax Commission; Salt Lake County Assessor; Utah Department of Employment Security; and Jerry W. Brailsford, Appellees.

BAP No. UT–96–040.
Bankruptcy No. 94–21665.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 30, 1997.

Joel T. Marker of McKay, Burton & Thurman, Salt Lake City, UT, for Appellant.

Joanne E. Duane, Tax Division, Department of Justice, Washington, DC (Jerome H. Fridkin, Chief, Civil Trial Section, United States Department of Justice, Washington, DC, Scott M. Matheson, Jr., United States Attorney, Salt Lake City, UT, Mark H. Howard, Special Assistant United States Attorney, Salt Lake City, UT, with her on the brief), Salt Lake City, UT, for the United States.

Mary Ellen Sloan, Deputy Salt Lake County Attorney (Douglas R. Short, Salt Lake County Attorney, with her on the brief), Salt Lake City, UT, for Appellee Salt Lake County.

Before BOHANON, ROBINSON, and CORNISH, Bankruptcy Judges.

## OPINION

ROBINSON, Bankruptcy Judge.

Stephen W. Rupp, trustee of the Chapter 7 bankruptcy estate of Rocky Mountain Refractories, appeals the judgment of the United States Bankruptcy Court for the District of Utah finding that the interest incurred during the Chapter 11 case on the administrative expense claims must be paid at the same priority as the underlying administrative expense claims after the Chapter 11 case is converted to a case under Chapter 7. *See In re Rocky Mountain Refractories,* 205 B.R. 307 (Bankr.D.Utah 1996). We affirm the Bankruptcy Court's judgment.

Neither party disputes the Bankruptcy Court's findings of fact. Therefore, this Court must review the Bankruptcy Court's statutory interpretation of the priority provisions of the Bankruptcy Code. The Bankruptcy Court's legal determinations are subject to *de novo* review. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988).

## FACTS

Rocky Mountain Refractories ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 4, 1994. After the Debtor incurred in excess of $350,000 in unpaid administrative claims, the Bankruptcy Court converted the Chapter 11 case to a Chapter 7 case on September 29, 1995. Stephen W. Rupp was appointed as the Chapter 7 trustee ("Trustee"). Pursuant to the Trustee's request, the Bankruptcy Court fixed May 1, 1996 as the bar date to

file requests for payment of administrative expense claims.

The following governmental entities filed proofs of claim against the Debtor's estate, which the Bankruptcy Court deemed to be requests for payment of administrative expense claims pursuant to 11 U.S.C. § 503(a):[1]

| Claimant | Claim No. | Date Filed | Tax & Penalties | Interest |
|---|---|---|---|---|
| Salt Lake County Assessor | 65 | 9/14/95 | $ 2,596.10 | $ 305.00 |
| Internal Revenue Service | 68 | 1/10/96 | $71,692.86 | $8,362.50 |
| Utah State Tax Commission | 106 | 4/29/96 | $29,030.84 | $1,430.43 |
| Utah Dept. Empl. Security | 111 | 5/30/96 | $ 8,032.03 | $ 929.29 |

On February 6, 1996, Jerry W. Brailsford, a trade creditor of the Debtor, filed a proof of claim which was designated as claim number 88. On its face, the trade claim seeks payment of $17,504.38 as an unsecured nonpriority claim for goods sold during 1994 and 1995. The documents attached to the trade claim demonstrate that it is for goods sold to the Debtor prior to and during the Debtor's Chapter 11 case, plus interest on unpaid amounts for goods sold to the Debtor during the Debtor's Chapter 11 case. At a hearing held on July 29, 1996, the Bankruptcy Court reclassified the trade claim into pre- and postpetition claims. The stipulated amount of interest on the postpetition portion of the claim is $1,062.88.

The Bankruptcy Court held that the interest incurred during the Chapter 11 case on these administrative expense claims is allowable, but that such interest stopped accruing when the case was converted to a case under Chapter 7, and that the interest incurred during the Chapter 11 case must be paid at the same priority as the underlying administrative expense claims.

## DISCUSSION

The Trustee does not dispute the Bankruptcy Court's finding that interest incurred during the Chapter 11 case on the administrative expense claims in issue is allowable. Although the appellees discuss at great length whether § 503(b) is ambiguous regarding the allowance of interest, the Trustee is not challenging the allowance of interest on Chapter 11 administrative expenses, but frames the issue as "whether the bankruptcy court erred in concluding that, in a Chapter 7 case, interest on administrative expense claims is payable as a first priority claim notwithstanding the unambiguous language of § 726(a)(5)." The Trustee notes that in his objection to the claims filed by the taxing entities he stated that "the tax and related penalty asserted by each of the taxing entities should be allowed as a Chapter 11 priority administrative expense and that interest on such claims should be subordinated pursuant to Bankruptcy Code section 726(a)(5)." Thus, we will not address whether § 503(b) provides for the allowance of interest as an administrative expense.[2] Rather, the issue on appeal is whether interest that accrues on administrative expenses must be subordinated in priority pursuant to § 726(a)(5).

The Bankruptcy Court held that *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), dictates that interest on the Chapter 11 administrative expense claims should be paid at the same priority as the underlying administrative expense claims; and that this finding is in accord with all of the decisions of the United States Courts of Appeals which have addressed this issue. *See Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.),* 19 F.3d 1371 (11th Cir.1994); *United States v.*

---

1. Unless otherwise noted, all references to a section are to the respective section of Title 11, United States Code.

2. Several of the arguments made by the dissent, such as when interest begins to run and whether § 503(b)(1)(B) and (C) provide for interest, go to the issue of allowance, which is not before the panel in this case.

*Flo–Lizer, Inc. (In re Flo–Lizer, Inc.),* 916 F.2d 363 (6th Cir.1990); *United States v. Ledlin (In re Mark Anthony Constr., Inc.),* 886 F.2d 1101 (9th Cir.1989); *United States v. Cranshaw (In re Allied Mechanical Servs., Inc.),* 885 F.2d 837 (11th Cir.1989); *United States v. Friendship College, Inc. (In re Friendship College, Inc.),* 737 F.2d 430 (4th Cir.1984); *see also Towers v. United States (In re Pacific–Atlantic Trading Co.),* 64 F.3d 1292, 1298 (9th Cir.1995); *United States v. Boatmen's First Nat'l Bank,* 5 F.3d 1157, 1160 (8th Cir.1993). The decisions by the Court of Appeals have been cited with approval by the Tenth Circuit in *Small Business Admin. v. Preferred Door Co. (In re Preferred Door Co.),* 990 F.2d 547, 550 (10th Cir.1993), where the Court assumed that interest on administrative expense claims is allowable and paid at the same priority as the underlying claim. The Bankruptcy Court held that although *Nicholas* was decided under the former Bankruptcy Act, it remains binding law. In enacting the Bankruptcy Code, Congress did not express a clear intent to abolish the rule in *Nicholas.*

■ The Trustee argues that § 726 is unambiguous and therefore should be applied according to its natural reading. We agree that the statute is unambiguous, but disagree with the Trustee as to what constitutes its natural reading.[3] The proper starting point for statutory interpretation is with the language of the statute itself. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The relevant provisions of the Bankruptcy Code include § 726(a) and (b), § 507(a)(1), and § 503(b). Section 726(a) and (b) provides that:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title ...;

...

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; ...

....

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter ... a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

Section 507(a)(1) provides that:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28 [28 U.S.C. § 1911 et seq.].

Section 503(b)(1) provides that:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, ...

... and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph....

---

**3.** We base our decision on statutory interpretation. Although we noted that the Bankruptcy Court relied on *Nicholas,* we are not, as suggested by the dissent, relying on *Nicholas* to determine the priority issue.

Section 726(a)(5) applies to post–Chapter 7 interest. The Chapter 7 priority scheme should not affect the Chapter 11 claims, which were fixed at the time of conversion, except as expressly provided for in Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 103(b) (providing that Subchapters I and II of Chapter 7 apply only in a Chapter 7 case); 11 U.S.C. § 726(b) (providing that upon conversion, § 503(b) claims incurred in the Chapter 7 case have priority over § 503(b) claims incurred in the Chapter 11 case); 11 U.S.C. § 726(a)(4) (setting the priority for certain claims arising before the earlier of the order for relief or the appointment of a trustee).

The Trustee argues that nothing in § 726 limits its reach to postconversion interest. The Trustee cites § 726(b) and § 726(a)(4), and argues that Congress has carved out exceptions that are subordinated upon conversion. However, § 726 only comes into play postconversion. *See* 11 U.S.C. § 103(b). Therefore, if § 726 affects preconversion claims, it should expressly so provide. That is why Congress has carved out exceptions that subordinate certain claims upon conversion, such as § 726(b) (which subordinates Chapter 11 administrative expense claims to Chapter 7 administrative expense claims), rather than paying all administrative expense claims pro rata in the first tier of distribution under § 726(a)(1).

■■■ The real focus should be on the absence of any language in § 726(b) bifurcating the Chapter 11 administrative expense claim. A Chapter 11 administrative expense claim is fixed upon conversion. Pursuant to § 101(5)(A), a "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Accrued interest constitutes a

"right to payment."[4] Since administrative expenses incurred by the estate in a Chapter 11 case are allowable, upon conversion the claim includes both the underlying claim and accrued interest. Although § 726(a)(5) bifurcates a claim into underlying claim and interest, that rule applies to claims incurred in a Chapter 7 and has no application to claims incurred in the Chapter 11 case.[5] If Congress intended to bifurcate a Chapter 11 administrative expense claim, surely it would have expressly said so in § 726(b). There is no language in § 726 or elsewhere that directs bifurcation of a claim that was essentially fixed in amount on the date of conversion.

Viewing the interest as an integral part of the fixed claim is consistent with case law and statutory law, which view interest on tax claims as part of the underlying claim. *See Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 907–08, 11 L.Ed.2d 772 (1964); 26 U.S.C. § 6601(e)(1); Utah Code Ann. § 59–1–705 (1996).

■■■ The Trustee argues that the interest on administrative expense claims must be paid pursuant to § 726(a)(5), and any other reading would render that section meaningless. However, our reading of § 726(a)(5) as applying to post–Chapter 7 interest would not render the section a nullity. The Bankruptcy Court noted that § 726(a)(5) can be read in conjunction with *Nicholas* without being rendered meaningless. The administrative expense claim, including interest incurred during the Chapter 11 case, is paid as the "claim" under § 726(a)(1). Under § 726(a)(5), after the entire administrative expense claim including interest is paid pursuant to §§ 507(a)(1) and 726(a)(1) and (b), and all other claims listed in subsections (a)(1) through (4) of § 726 are paid in full, any remaining funds may be used to pay

---

4. The arguments regarding when the interest accrued address the allowance issue, which the Trustee admits he has waived in this case.

5. The dissent misconstrues this statement as alleging that the priority of a claim incurred under Chapter 11 is not governed by § 726 upon conversion. We recognize that "§ 726 only comes into play postconversion." We are not saying that priorities are not determined under § 726.

The point is that § 726(a)(5) should not be read to bifurcate a fixed claim. Surely § 726(a)(5) would not bifurcate a prepetition claim that was comprised of interest. That is not the same as saying § 726(a)(5) does not apply to prepetition claims. We are saying that bifurcation under § 726(a)(5) only applies to post–Chapter 7 interest, not that priorities are not determined under § 726.

interest accrued postpetition on all of the claims, including claims that contain interest.

■ This interpretation is consistent with the history of § 726(a)(5), which was enacted to codify the "solvent debtor rule." This rule provides that if "the debtor ultimately proves solvent, a balance of the equities dictates that creditors may receive any surplus, including claims for interest arising postpetition, ahead of payment to the debtor." *Colortex Indus.,* 19 F.3d at 1376 (citing *City of New York v. Saper,* 336 U.S. 328, 330 n. 7, 69 S.Ct. 554, 555–56 n. 7, 93 L.Ed. 710 (1949)).

■ This interpretation is also consistent with the treatment of prepetition unsecured creditors, whose prepetition claims include interest incurred prepetition. If there are sufficient funds to make a distribution under § 726(a)(5), these prepetition creditors also receive interest accrued postpetition on the entire claim.

■ This interpretation also prevents the stripping of a Chapter 11 claimant's priority claim by the mere happenstance of conversion to Chapter 7. Chapter 11 does not have a provision similar to § 726(a)(5), which could be read to prevent the payment of interest on administrative expense claims. Under *Nicholas* and § 1129(a)(9), Chapter 11 administrative expense claimants could expect to be paid cash on the effective date of a plan for the entire amount of their claims, including interest. Disallowing such claims would deter creditors from dealing with Chapter 11 debtors. Chapter 11 administrative expenses are given priority "'to encourage creditors to supply necessary resources to debtors post-petition.'" *General American Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1134 (10th Cir.1993) (quoting *In re Grant Broadcasting,* 71 B.R. 891, 897 (Bankr.E.D.Pa.1987)). Granting first priority to postpetition interest on administrative expense claims incurred in a Chapter 11 case facilitates § 503(b)'s general purpose of encouraging creditors to continue dealing with Chapter 11 debtors. Bifurcating the administrative expense claim would destroy the Bankruptcy Code's protection of Chapter 11 creditors.

■ For the reasons set forth herein, the Court concludes that interest incurred during the Debtor's Chapter 11 case must be paid at the same priority as the underlying administrative expense claim. Accordingly, the judgment of the Bankruptcy Court is hereby affirmed.

BOHANON, Bankruptcy Judge, dissenting.

My interpretation of the statutes in question requires that I dissent from the decision of my colleagues for it is my conclusion the Bankruptcy Code mandates that the governmental units are not entitled to priority in payment of their claims for interest on taxes.

### THE STATUTES GOVERNING BANKRUPTCY PRIORITIES FOR INTEREST ON TAXES

The gist of the majority decision is that " § 726 only comes into play postconversion" and "[a]lthough § 726(a)(5) bifurcates a claim into underlying claim and interest, that rule applies to claims incurred in a Chapter 7 and has no application to claims incurred in the Chapter 11 case." I simply am unable to agree that the priority of a claim incurred under Chapter 11 is not governed by section 726 when the bankruptcy estate is distributed under Chapter 7. It belies logic to say that section 726 does not control priority of the preconversion claims for now, since there has been a conversion to Chapter 7, the provisions of that chapter control the case.

Section 726(a)(5) states in the most plain language that it controls priority for payment of interest *"from the date of the filing of the petition."* (emphasis supplied). And, moreover, "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title ... *does not effect a change in the date of the filing of the petition."* 11 U.S.C. § 348(a) (emphasis supplied). Furthermore, there is only one estate against which the governmental units can have a claim. That estate is now being administered under Chapter 7 and the distribution will be made under that chapter. *See* 11 U.S.C. § 541(a). If the claims are not against the Chapter 7 estate, whom are they against? There is no longer a Chapter 11 estate so, therefore, the taxing authorities

can only claim against the Chapter 7 estate. I am thus compelled to conclude that section 726(a)(5) controls the distributions to be made in this case for there is only one petition and only one estate.

The majority decision gives interest on administrative expenses and taxes incurred preconversion to Chapter 7 the first priority under section 726(a)(1) which states that it includes claims of the kind specified in section 507. Section 507(a)(1) then gives priority to "administrative expenses allowed under section 503(b)." Subsection 503(b)(1)(B) then allows priority for the taxes and subsection (C) allows priority for fines and penalties relating to the taxes. Nowhere in this scheme, except in section 726(a)(5), does Congress allow priority for interest, and there it is subordinated to the next-to-last category, before distribution of a surplus to the debtor. This language is not ambiguous and it seems logical to me that, had Congress wanted taxing authorities to receive interest as a priority it would have said so when it dealt with taxes and penalties in section 503(b)(1)(B) and (C).[1]

I have already expressed my views of how statutes are to be interpreted, especially with regard to the Bankruptcy Code, and it serves no useful purpose to repeat them here. *See In re Horwitz,* 167 B.R. 237 (Bankr. W.D.Okla.1994). There, I discussed the Supreme Court's holdings on this subject and demonstrated that some statutes are absolute and others are discreet. Absolute statutes are those that require the result mandated and do not allow room for the use of judicial discretion. Discreet statutes are those where Congress gives the courts discretion to reach a decision based on their analysis of what is just and equitable in a particular case.

Here, we are not required to look beyond the language of the statutory scheme to decide the case and there is nothing within that scheme either permitting or requiring any application of judicial discretion. The mandate is absolute and unequivocal—priority for the payment of interest in a case under Chapter 7 is controlled by section 726(a)(5). Nowhere else is the subject even mentioned. If the statutes produce a result that is contrary to sound policy it is for Congress to change the laws, not for the courts to "interpret" them in a manner that produces the result they think is most appropriate under the circumstances.

### *NICHOLAS DOES NOT DIRECTLY HOLD THAT INTEREST ON TAXES IN-CURRED DURING THE ARRANGE-MENT PERIOD ARE ALLOWED THE FIRST PRIORITY*

From my reading of it, *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), neither requires nor permits the granting of priority to the interest claims in this case. First, it is axiomatic that the decision was rendered long before enactment of the 1978 Bankruptcy Code and the line of cases concerning the "plain meaning" of bankruptcy statutes.

Secondly, a close reading of *Nicholas* shows that it does not actually allow priority for interest on taxes incurred between the petition date and the conversion.[2] While it

---

1. Granted, section 503(b) says it allows priority for administrative claims "including" certain enumerated types of claims and the term "including" in the Bankruptcy Code is not limiting under the rules of construction. *See* 11 U.S.C. § 102(3). In this context, however, the expenses that are included are those necessary for preservation of the estate. *See 4 Collier on Bankruptcy* ¶ 503.06[3][b] (Lawrence P. King ed., 15th ed. rev.1997); *see also In re City Roofing Co.,* 208 B.R. 503, 505 (Bankr.E.D.Okla.1997) ("To be entitled to administrative priority status, a creditor must show that it provided a measurable benefit to the debtor's estate."). Payment of interest on taxes does not provide any measurable benefit to the estate but, instead, depletes it at the expense of other creditors.

2. It is necessary to read *Nicholas* understanding the terminology used by the Court in connection with the Bankruptcy Act in effect in 1966. When the decision refers to the "petition in bankruptcy" it means, in the language of section 1112(a) and (b) of the Bankruptcy Code, to "convert a case under this chapter to a case under chapter 7," and when *Nicholas* refers to the "petition for an arrangement" it is the same as the "petition" commencing a case under section 301 of the Code. *See, e.g.,* 9 Harold Remington, *A Treatise on the Bankruptcy Law of the United States* § 3666 (6th ed. 1955) ("The statute treats transmutation of a Chapter XI proceeding into a straight bankruptcy as a 'dismissal' of the Chapter XI proceeding.").

does state "taxes incurred during the arrangement period are expenses of the Chapter XI proceedings and are therefore technically a part of the first priority," it does not say *interest* on the taxes have any priority. *Nicholas*, 384 U.S. at 687–88, 86 S.Ct. at 1681–82. In this connection it is important to note that *Nicholas* does say:

> Since the taxes in question were incurred during the Chapter XI arrangement proceeding itself, the United States was entitled to interest on those taxes for the duration of that period. The actual arrangement proceeding in this case, however, terminated before the taxes became payable, and, therefore, no interest on the taxes accumulated before the petition in bankruptcy [*viz.* conversion to Chapter 7] was filed by the debtor in possession. The entire amount of interest sought by the United States represents interest claimed for the liquidating bankruptcy period. *Since we hold that the accumulation of interest on debts incurred during Chapter XI proceedings is suspended on the date the petition in the superseding bankruptcy* [conversion] *is filed, it is clear that the United States is not entitled to the interest that it seeks on the taxes in this case.*

*Nicholas*, 384 U.S. at 689–90, 86 S.Ct. at 1683 (emphasis supplied).

Thus, while a tax liability was "incurred" preconversion it was neither due nor payable until after conversion. Obviously no interest is owed until the underlying tax is due and the case does not hold that interest has any priority for none was due. The case does say there is a *liability* for taxes and interest incurred during the arrangement phase but does not reach the issue of what, if any, *priority* the interest has, for ·no interest came due during that phase of the case. For example, an individual taxpayer has liability for income taxes incurred up to December 31 but they are not due until April 15 of the following year. Only if not paid when due does interest commence running. Or, in Bankruptcy Code language, before December 31 the obligation to pay the taxes is an "unmatured" claim and there is no claim at all for interest because the government does not have a "right to payment" for interest until after April 15. 11 U.S.C. § 101(5)(A). In our case the conversion date equates to December 31 in the illustration. In *Nicholas* interest never started to run for the taxes were not due until after the liquidation phase (conversion) commenced. The decision simply does not say interest on the taxes has priority, for it doesn't reach the issue.

All *Nicholas* really holds is that interest on taxes is "suspended" on the date of the original petition and again on the date of conversion to a liquidation case. The decision never reaches the issue of whether the government is entitled to any priority for interest during the period between the petition and the conversion to Chapter 7, for the fundamental reason that none was owed. Therefore, when the majority and other courts rely on *Nicholas* to provide priority treatment for interest on taxes incurred during the preconversion period they are relying on *obiter dictum.*

Additionally, to apply *Nicholas* as the majority does would now require that *all* postpetition interest on taxes, even when it accrues after conversion of the case to Chapter 7, be given the first priority. This is so for section 503(b)(1) does not distinguish between administrative priorities before and after conversion.[3] If we insert "interest on taxes" into section 503(b)(1), as the majority must, it then has the same priority as the tax and the fines and penalties because, once "interest" becomes part of the 503(b) priority, it stays there even after conversion of the case to Chapter 7 and then has the first priority under section 726(a)(1). We would have to reach this conclusion because there is nowhere for "interest on taxes" to go but to section 503(b)(1) and, once having read language into a statute, we can't later disregard it and say "now you see it, now you don't." This outcome would then be directly contrary to both *Nicholas*, which clearly does not allow priority for postconversion interest on

---

**3.** 11 U.S.C. § 103(b) provides that "chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title."

taxes, and to section 726(a)(5), which draws no distinction between interest on taxes and other interest.[4] The majority reach their conclusion by saying when Congress refers to "tax" in section 503(b)(1) it impliedly includes interest on the tax. This rationale then has the effect of inserting the word "interest" into either subsection (B) or (C) of section 503(b)(1). This result is unnecessary under both the statutes and the decision of the Supreme Court upon which they rely.

The Internal Revenue Code provision relied on by the majority states that the interest is treated as tax. *See* 26 U.S.C. § 6601(e)(1). This section, however, deals only with the taxpayer's *liability* for the payment of interest on taxes—it does not deal with what *priority* that claim is entitled to receive in bankruptcy. There is no question that the governments have claims for the interest and are entitled to have them *allowed* in the bankruptcy case, for they are liabilities of the estate. When we come to deal with the separate issue of the priority for interest on the taxes, however, it is then necessary to look at the Bankruptcy Code. The Tax Code does not conflict with this postulate. The pertinent section provides:

> Interest treated as tax.—Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference *in this title* ... to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

26 U.S.C. § 6601(e)(1) (emphasis supplied). A reading of this section shows that it is referring only to liabilities created by the Tax Code. If it read "any reference in this title *or other laws of the United States*," it might then lead to the same conclusion that the majority reaches. That language, howev-

er, is not in the statute. The Tax Code governs liability to pay the tax with interest, while section 726(a)(5) of the Bankruptcy Code governs the priority that liability receives when an estate is distributed in a case under Chapter 7, which this is. These are two separate issues and there is no inconsistency between the two codes.[5] The majority muddles the fundamental distinction between the *liability* to pay interest on taxes and the *priority* that obligation has upon distribution in bankruptcy.

The majority also relies on *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), to hold that interest on taxes is entitled to the same priority as the tax. That conclusion stretches the holding of the decision too far. *Bruning* was, of course, decided prior to enactment of the statutory scheme we are considering here and considers only the debtor's personal liability for postpetition interest on a tax claim that is non-dischargeable in the bankruptcy case. It pointedly does not concern priorities of payments made from the estate. It says that "[i]n the instant case, collection of post-petition interest [from the debtor personally] cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors." 376 U.S. at 363, 84 S.Ct. at 909. In our case payment of interest on the taxes will certainly diminish the estate in favor of the governmental units at the expense of the other creditors, and conceivably will delay and unduly inconvenience administration of the estate. Thus, even the policy arguments can be said to weigh in favor of subordinating interest on the taxes. In any event, however, the task of balancing these interests is one for the Congress, not the courts.

---

4. This result is not contrary to section 726(b) for it comes into play only if there is a conflict between payment of administrative expenses incurred before and after conversion. In fact, under section 726(b) the Chapter 7 interest on taxes has priority over interest on taxes incurred under Chapter 11. The majority's conclusion would then contravene section 726(b) for it would allow priority interest on taxes incurred during Chapter 11 over similar interest due in the subsequent Chapter 7 case.

5. Likewise, 28 U.S.C. § 960 says only that the taxing authorities have a claim for the taxes. It also does not concern priorities in a bankruptcy case. There is no question but that the bankruptcy estate is liable for the taxes but the issue at hand is what priority that liability receives. *See also Nicholas*, 384 U.S. at 690, 86 S.Ct. at 1683.

The majority additionally rely on *Small Business Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547 (10th Cir.1993), which, as they must recognize, "assumed" that interest on taxes carries the priority. Granted, the Court of Appeals did impliedly insert "interest on taxes" into section 503(b)(1), but it is significant that that decision does not confront the clear language of section 726(a)(5), for the case had not been converted to one under Chapter 7.[6]

In concluding, the majority says that "[g]ranting first priority to postpetition interest on administrative expense claims incurred in a Chapter 11 case facilitates § 503(b)'s general purpose of encouraging creditors to continue dealing with Chapter 11 debtors." This statement may be true but it is not relevant to our case. I find nothing in *Nicholas* or the Code saying that trade creditors, suppliers, landlords, lawyers, and others who supply goods and services to Chapter 11 debtors are entitled to interest on their administrative claims. *Nicholas* addresses only interest on taxes, not interest on other administrative expenses. Furthermore, is it logical to say that taxing authorities need an incentive to levy taxes on debtors? I believe the question answers itself. And, if entities who assist in preserving estates are to be paid interest on their claims that is a policy issue for Congress to deal with. When the majority allow priority interest on the Brailsford trade claim they are, indeed, venturing into uncharted waters.

## CONSIDERATION OF THE LEGISLATIVE HISTORY

What this case ultimately comes down to is whether or not the outcome is controlled by *Nicholas* assuming, *arguendo*, that the decision does grant priority for the interest claims of the governmental units. As I have explained, section 726 controls distribution of property of this estate. The funds to pay the interest are unquestionably estate property; the case is under Chapter 7 and, thus, the priority for payment of interest is governed by section 726(a)(5). I can find no ambiguity in this absolute mandate.

It is apparent that recent decisions of the Court and contemporary jurisprudence indicate that reliance on legislative history should be limited to cases where the statute being interpreted is ambiguous or the result reached by following it is absurd and the history, itself, expresses a clear intent explaining its meaning. *See* 3 *Sutherland Statutory Construction* 631 (Norman J. Singer ed., 5th ed.1992).[7] *See also* Note, *Why Learned Hand Would Never Consult Legislative History Today*, 105 Harv.L.Rev. 1005 (1992) (which contains an interesting discussion of the unreliability of present-day legislative history and proposes a refreshing approach to the issue).

Even if we do look at it, however, in this case the legislative history is of no real assistance. All the history shows is that the original Senate version of the Bankruptcy Code expressly provided for interest priority and this language was dropped in the final version. *See* 4 *Collier on Bankruptcy* ¶ 503.08 (Lawrence P. King ed., 15th ed. rev.1997). What, therefore, does this omission mean? On the one hand we can read it to say that the intent was to not allow the priority or, on the other hand, we can say that the language was eliminated for it was deemed unnecessary. Numerous cases ex-

---

**6.** Obviously our case does not directly concern what, if any, priority interest on taxes receives in a case that remains under Chapter 11. My examination of sections 503 and 507 does not disclose any required priority for these claims. It can be presumed, however, that in a Chapter 11 case the issue would arise in connection with the government's objections to confirmation of a plan of reorganization, and the requirements of section 1129(b)(1) where Congress has granted the courts discretion to determine whether or not a plan discriminates unfairly and whether or not it is fair and equitable under all the circumstances of the case. *See, e.g., Horwitz*, 167 B.R.

at 241. In some cases these factors may weigh in favor of allowing priority for interest on postpetition taxes, and in others they may not. The decision would need to take into consideration, among other factors, the rule of absolute priority, the classification and treatment of the interest claim, and what the taxing entities would receive in a liquidation under Chapter 7.

**7.** This portion of the treatise is a reprint of Daniel A. Farber and Philip P. Frickey, *Legislative Intent and Public Choice*, 74 Va.L.Rev. 423 (1988).

emplify this dichotomy. *See, e.g., United States v. Tedlin (In re Mark Anthony Constr., Inc.),* 78 B.R. 260 (9th Cir. BAP 1987), *rev'd,* 886 F.2d 1101 (9th Cir.1989). There, two courts, each considering the same case, find a different intent in the same legislative history. Thus, the history itself is ambiguous and unclear while, to me at least, the Code is not.

It also seems superfluous to attach great significance to the fact that the legislative history does not mention *Nicholas.* Granted, there is no precise language in the legislative history specifically abrogating *Nicholas.* Does this mean that if Congress does not directly address a specific decision when enacting an entirely new code the force of its legislation is impaired? To my thinking the answer to this interrogatory must, in the context of this case, be in the negative. Here Congress passed an entirely new, comprehensive scheme to control the administration and liquidation of bankruptcy estates. It is improbable that in so doing it would enumerate the hundreds of decisions that might be affected. There is no need for that enumeration because the Code was not necessarily aimed at overturning any specific decision. Instead, its purpose is more universal than that and its goal is to implement the new scheme.

Also, one would expect that if a case of historical proportions and great public significance is being specifically abrogated Congress would make some recorded discussion of that fact. For example, if Congress were setting about to attempt to alter *Brown v. Board of Education,* 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) or *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) there likely would be considerable discussion of the specific decision in the history of its proceedings and an expression of the intended result. On the other hand, arranging the priorities of bankruptcy distribution is hardly of wide public significance and is primarily of interest to only a handful of lawyers and accountants. It is inconceivable that Congress would, or even could, list every case affected by the adoption of a comprehensive new code. This is especially true

when we remember that the portion of *Nicholas* in question is *dicta.*

The standard treatise on statutory construction discusses legislative abrogation of judicial pronouncements with the following statement:

> [M]odern society and judges have recognized that mechanical application of ancient doctrines disfavoring changes in existing law results in artificial, gratuitous, judicially fabricated obstacles to progress through legislation, and has no justification in principle. The more favored modern attitude was rationalized in the remarks of a state court, which called it "fair" interpretation:
>
> > "We do not consider ourselves at liberty to apply any rule of 'strict construction' to this or any other statute simply because it happens to be in derogation of the common law. Legislatures intend by such statutes to replace or change rules of the common law. Too much judicial indulgence in 'strict construction' of statutes has heretofore disguised 'extraconstitutional obstacles to, or hindrances of, legislative purpose'.... *Our effort is rather to give any statute a 'fair construction with the purpose of its enactment in view, not narrowed or restricted because it is a substitute for the discarded common law.'*"
>
> The legal system deals with everything under the sun. Every statute embodying new affirmative legislation, as distinguished from statutes which merely codify existing law, has the purpose and effect of changing some element or provision in the established body of traditional or statutory law. Furthermore, changing social and economic conditions have often made reference to the older jurisprudence less valuable. *The result has been that the most responsive interpretative technique is one which recognizes that one of the best sources of information is the policy general plan [sic] of the legislation itself.*

3 *Sutherland Statutory Construction* § 58.03 (Norman J. Singer ed., 5th ed.1992) (emphasis supplied) (footnotes omitted).

In our case the requirement of the Bankruptcy Code governing distribution of an es-

tate in Chapter 7 is to give interest the priority of section 726(a)(5) and this is now a Chapter 7 case.

For these reasons I would reverse the decision of the Bankruptcy Court.